UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD K. ZIMRING,<br><br>Plaintiff,<br><br>v.<br><br>CATHERINE HUGUETTE PHILIPPE,<br><br>Defendant. | No. 14 C 0729<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard K. Zimring has brought this diversity action against Defendant Catherine Huguette Philippe for negligence. Defendant has moved for dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, Defendant's motion is granted.

**BACKGROUND**

Plaintiff is a citizen and resident of Illinois while Defendant is a citizen and resident of California with no alleged prior contacts with Illinois. Plaintiff alleges that on July[1] 16, 2013, Defendant hit him with her car while he was walking along a pedestrian crosswalk at the arrival section of the Los Angeles International Airport (LAX) in California. Plaintiff subsequently returned to his home in Illinois and through Defendant's liability insurer, Liberty Mutual, he claimed certain medical injuries and property damages. Liberty Mutual assigned a Kentucky-based claims manager to handle the matter.

---

[1] Plaintiff's Complaint, Amended Complaint, and brief in Opposition to Defendant's Motion to Dismiss all allege the date of the automobile incident as July 16, 2013, but some of the exhibits, including complaints to the California Department of Insurance, identify the date as June 16, 2013.

1

It appears that a dispute arose between Plaintiff and Liberty Mutual over the necessity of certain documents to support and process Plaintiff's claims. In October 2013, after several months and no resolution, Liberty Mutual assigned one of its Illinois-based Special Investigations Unit investigators, David Palgen, to look into the matter further. After a telephone conversation between Plaintiff and Palgen, during which Plaintiff demanded some of Defendant's policy and other personal information, Liberty Mutual refused the request citing California insurance regulations requiring the permission of the insured to disclose such information. Plaintiff alleges that Palgen's investigation included conversations with Plaintiff. Upon completing his investigation, Palgen reviewed his findings with the claims manager who notified Plaintiff that Liberty Mutual would not process his claims without further documentation.

On January 31, 2014, Plaintiff filed this action against Defendant before the United States District Court for the Northern District of Illinois, and completed service of process to Defendant at her home in California via mail. Plaintiff later amended his complaint on April 2, 2014. Defendant filed this 12(b)(2) motion to dismiss the amended complaint on April 8, 2014.

## DISCUSSION

In a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction where the motion is decided on the parties' submissions, the plaintiff must make a prima facie showing of personal jurisdiction. *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). I resolve any factual conflicts in these submissions in favor of the plaintiff. *See id.* ("under the prima facie standard, the plaintiff is entitled to have conflicts in the affidavits (or supporting materials) resolved in its favor").

Federal district courts exercising diversity jurisdiction may only assert personal jurisdiction if a court of the state in which the court sits would have jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). The exercise of jurisdiction in Illinois must comply with the Illinois Long-Arm Statute, the Illinois Constitution, and Federal Due Process. *See Citadel Group Ltd. v. Wash. Regional Medical Center*, 536 F.3d 757, 760-61 (7th Cir. 2008). Because the relevant state statute extends to the outer limits of the Illinois and United States Constitutions, 735 ILCS 5/2-209(c), courts often proceed directly to the Federal Due Process analysis, *Citadel Group*, F.3d at 760-61.

The Fourteenth Amendment of the United States Constitution requires that the assertion of personal jurisdiction over an out-of-state defendant comport with due process. Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (internal quotes omitted).

In determining whether a defendant has the requisite minimum contacts, the inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Specifically, the defendant must have purposefully availed herself of the privilege of conducting activity within the forum state, thus invoking the benefits and protections of the laws of the forum state. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). Such purposeful availing should in turn make it foreseeable that the defendant would be haled into a court of that state. "[R]andom, fortuitous, or attenuated contacts" with the forum state do not establish foreseeability. *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1218 (7th Cir. 1990) (internal quotes omitted).

3

Further, an out-of-state defendant does not necessarily establish minimum contacts with a forum state merely by virtue of continuing to communicate or interface with a plaintiff who unilaterally moved to that state. *See Hanson v. Denckla*, 357 U.S. 235, 251-53 (1958) (holding that the exercise of personal jurisdiction by a Florida court over a Delaware trustee with no contacts with Florida violates due process where the settlor (1) was a Pennsylvania resident at the time the trust was established in Delaware; (2) unilaterally moved to Florida thereafter; and (3) continued to interface with the Delaware trustee by handling "several bits of trust administration" and receiving interest payments from the corpus of the trust); *Rush v. Savchuk*, 444 U.S. 320 (1980) (holding that the exercise of personal jurisdiction by a Minnesota court is unconstitutional where a plaintiff-passenger in a single-car accident in Indiana unilaterally moved to Minnesota and sued the driver in that state by garnishing the defendant's State Farm insurance policy that "resided" in Minnesota); *Greene v. Bissen*, No. 94 C 2988, 1994 WL 654484 (N.D. Ill. 1994) (declining to exercise personal jurisdiction over a Wisconsin defendant who got into an accident in Minnesota while driving the Illinois passenger-plaintiff's car, and the defendant had no other connection to Illinois). Rather, it must be the defendant's acts of purposeful availing that create the requisite minimum contacts. *Purdue Research*, 338 F.3d at 780.

Here, Plaintiff does not allege that Defendant had any constitutionally relevant contact with Illinois at the time of the incident at LAX. The accident occurred in California and Defendant lives there. As it pertains to the events that gave rise to this cause of action, Plaintiff did not purposely avail herself of the benefits and protections of any state other than California. Whatever contact Defendant may have developed with Illinois was due to the unilateral return of Plaintiff to that state.

4

Plaintiff's reliance on *LaBonte v. Preyer* to apply an agency theory for the exercise of personal jurisdiction over Defendant is misguided. 300 F. Supp. 1078 (E.D. Wis. 1969). That case involved a negligence claim brought by a Wisconsinite against a Michiganian for an auto accident in Michigan. *Id.* at 1079. The court asserted personal jurisdiction because a Wisconsin claims manager for the defendant's insurer had been engaging in settlement negotiations with the plaintiff. *Id.* at 1080. The court reasoned that the claims manager was acting as the defendant's agent, and therefore, the defendant himself was engaging in "substantial and not isolated activities" in Wisconsin. *Id.* at 1081-82.

Yet, *LaBonte*'s application of the agency theory was called into question by the same federal district court just six years later in *Kirchen v. Orth*. 390 F. Supp. 313 (E.D. Wis. 1975). Under a largely similar set of facts, that court identified that in Wisconsin, an agency relationship turns on several factors, including the extent of control retained by the alleged principal. *Id.* at 317. Thus, the real question is, "[w]hat control or right of control does the insured have over his insurer in the conduct of settlement negotiations?" *Id.* The *Kirchen* court went on to observe that "[a]ll liability insurance policies contain provisions reserving to the insurer the right to defend any action against the insured and to make such investigation, negotiation, and settlement of any claim or suit as it, the insurer, deems expedient." *Id.* Thus, exercising personal jurisdiction over an individual defendant who had no control over the manner or place of settlement negotiations would be offensive to due process. *Id. See also Tilidetzke v. Preiss*, 611 F. Supp. 275 (E.D. Wis. 1985); *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 258-260 (2014).

I find *Kirchen* persuasive and accordingly decline to exercise personal jurisdiction over Defendant. While Defendant's insurance company may have used one of its Illinois investigators to gather information from Plaintiff, I cannot impute the actions of the insurance

5

company to Defendant unless she controlled, or had the right to control, settlement negotiations. The facts alleged in the record simply do not make a prima facie showing of such control.

Construing the facts most favorably to Plaintiff, it appears that settlement negotiations began between Plaintiff and a Kentucky-based claims manager—not Plaintiff and Defendant. Pl.'s Opp'n to Def.'s Mot. to Dismiss, Ex. A.  When talks between Plaintiff and the insurance company did not proceed to their satisfaction, it was the insurance company who assigned an Illinois-based investigator to gather more information. *Id.* at ¶ 8.  From Plaintiff's allegations, the only instance of Defendant's participation in these communications was when she asserted her right under California law not to reveal certain personal information and Palgen's "re-interview" of Defendant—actions that do not imply control over the actual settlement negotiations.  Pl.'s Aff. Supp. Pl.'s Opp'n to Def.'s Mot. to Dismiss, ¶¶ 7, 11.  No such control means no purposeful availing of the benefits and protections of the law of Illinois, *see Kirchen*, 390 F. Supp. at 317, such that being haled into an Illinois court was not reasonably foreseeable.

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 26, 2014